**IOWA–DES MOINES NATIONAL
BANK, Appellee,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellant.**

**UNITED STATES NATIONAL BANK
OF OMAHA, Appellee,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellant.**

**Nos. 78–1080 and 78–1081.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1978.

Decided Feb. 7, 1979.

**434**

Gary R. Allen, Atty., Tax Division, Dept. of Justice, Washington D. C., argued, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Aaron P. Rosenfeld, Washington, D. C., on brief and appendix, for appellant.

Erwin M. Goldstein of Faegre & Benson, Minneapolis, Minn., argued, Jack D. Gage, Minneapolis, Minn., on brief, for appellee.

Before GIBSON, Chief Judge, LAY and HEANEY, Circuit Judges.

GIBSON, Chief Judge.

These consolidated cases involve the income tax deductibility of certain payments made by Iowa-Des Moines National Bank in 1969 and United States National Bank of Omaha in 1969 and 1970. The Commissioner disallowed the deductions and determined deficiencies.[1] Pursuant to petition for redetermination, the Tax Court[2] concluded that the amounts here in issue and other amounts were properly deducted by the taxpayers as ordinary and necessary business expenses, with the exception of a $10,000 implementation fee which the Tax Court held to be a nondeductible capital expenditure.[3] The taxpayers did not appeal on the membership fee issue. The Commissioner appeals from a portion of the Tax Court's decision, questioning only the decision with respect to allowing a deduction for the costs incurred by taxpayers in acquiring credit information on prospective customers from the agent banks and from Charge Please, Inc. The Tax Court had held those costs to be comparable to credit investigation expenditures and not purchased assets in the nature of customer lists the cost of which should have been capitalized. We affirm.

The facts are carefully set out in the opinion of the Tax Court and will only briefly be set forth here. In 1968, the taxpayers decided to become card-issuing banks of the Interbank Card Association (Master Charge) system. During that year and the following two years, the taxpayers expended funds in operating the card program. On their tax returns they deducted the various costs as ordinary and necessary business expenses under I.R.C. § 162(a). Included in the amounts so deducted were payments made to other banks and Charge

---

1. Initially the Commissioner disallowed all of the deductions taken by the taxpayers for the years 1968, 1969, and 1970 for expenses incurred in setting up a consumer credit card operation, contending (1) that taxpayers' establishment of a consumer credit card program constituted a "new trade or business" and that their pre-operational expenses were, therefore, not incurred in "carrying on any trade or business" within the meaning of § 162 of the Internal Revenue Code, and (2) that, in any event, all of the expenditures constituted capital expenditures nondeductible in those years.

2. The Honorable William M. Fay, Judge, United States Tax Court.

3. The findings of fact and opinion of the Tax Court are reported at 68 T.C. 872 (1977).

Please, Inc. for credit information on prospective cardholders.

The other banks involved are those that wished to provide their customers with Master Charge service but because of the large volume of accounts necessary to sustain this type of credit operation chose not to be card-issuing banks. The relationship between the taxpayers and these other banks is fully set out in the Tax Court opinion. The taxpayers were full member banks of the operation, and the other banks were either agent or limited member banks. Of importance here are payments of $1.00 made by taxpayers to each other bank for

> the credit screening of each prospective cardholder name submitted by it to [the taxpayers] in accordance with certain predetermined credit criteria, and to whom [taxpayers] actually issued a charge card. The names thus submitted by agent banks to [taxpayers] could not be used by [taxpayers] for any other purpose.

68 T.C. at 875. The credit-screened names were those of banking customers of the other participating banks.

The relationship between taxpayer United States National Bank of Omaha and Charge Please, Inc. differed from the taxpayers' relationship with the other banks. The Tax Court found that

> Charge Please, Inc. was a business which telephonically solicited applicants for Master Charge in accordance with credit criteria supplied by U. S. National. Upon receipt of the credit data with respect to persons interested in becoming cardholders, U. S. National would determine whether the data justified the issuance of Master Charge cards to such persons. Charge Please was compensated for this service at approximately $1.85 for each application meeting certain predetermined credit criteria.

68 T.C. at 877, n. 11.

During the years in question taxpayers made the following total payments to other banks and Charge Please, Inc., and deducted the amounts as ordinary and necessary business expenses:

| | 1969 | 1970 |
|---|---|---|
| Iowa-Des Moines National Bank | | |
| Payments to other banks | $196,160.09 | $ –0– |
| United States National Bank of Omaha | | |
| Payments to other banks | 114,678.00 | 6,121.00 |
| Payments to Charge Please, Inc. | 7,349.40 | 8,115.16 |

The Commissioner disagreed with this treatment and took the position that these and other expenditures should have been capitalized.[4] However, the Tax Court held those were ordinary and necessary expenditures for credit investigation purposes. On this appeal the Commissioner still contends that the payments were for the acquisition of capital assets and should have been capitalized rather than deducted.

In its briefs and at oral argument, the Government has persistently characterized the questioned payments as having been made for "customer lists." In this manner it has sought the shelter of the many cases that have held that the cost of purchasing customer lists must be capitalized. *See, e. g., Skilken v. Commissioner,* 420 F.2d 266 (6th Cir. 1969); *Willcuts v. Minnesota Tribune Co.,* 103 F.2d 947, 950 (8th Cir. 1939). However, by relying on this approach the Government has ignored the Tax Court's factual finding that the payments were for credit screening. There has been no contention that this factual finding was clearly erroneous. In this situation the cases dealing with "customer lists" are inapposite.

Instead, we must look to cases that have considered the requirements that must be met for an item to qualify as an "ordinary and necessary expense" deductible under I.R.C. § 162(a). *Commissioner v. Lincoln Savings & Loan Assn.,* 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971), listed the five requirements: "An item must (1) be 'paid or incurred during the taxable year', (2) be for 'carrying on

---

4. According to the Tax Court's opinion, these expenditures, if capitalized, could not be amortized. Supra at 878, n. 12.

any trade or business', (3) be an 'expense', (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." As in *Lincoln Savings,* the question here is whether the questioned payments were an "expense" and an "ordinary" expense or whether they were a capital expenditure. As Mr. Justice Cardozo noted, the answer is elusive: "The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933).

The parties have cited no other decisions involving the precise issue here framed. The Government's attorney stated at oral argument that he knew of no case deciding this question. In our judgment, the Tax Court properly analyzed the programs as extensions of the taxpayers' present business of banking and was correct in permitting the ordinary and necessary business expense deduction. Although no one factor is controlling, there are several that support this treatment.

■ The first factor to suggest itself is the short useful life of this credit information. Much of the information purchased soon proved valueless. The taxpayers sent unsolicited credit cards to persons who met criteria of credit-worthiness. Obviously some persons never used the cards. Even the information about persons who became credit card users had a short period of usefulness. Credit information is essential to any sound charge or credit program. Any credit information is short-lived and subject to sudden change. Thus, credit information must be current to be valuable and the taxpayers soon had a history of who did or did not pay the credit card charges. This new information was far more useful to taxpayers than the information purchased with the payments in dispute here. The fact that there may be some ensuing benefit and future effect from the expenditure beyond the taxable year when paid is not

controlling. *Commissioner v. Lincoln Savings & Loan Assn.,* 403 U.S. 345, 354, 91 S.Ct. 1893, 29 L.Ed.2d 519 (1971). Where the prospective benefit is very slight, capitalization is not easily supported.

A second factor is the limited nature of the information obtained. The taxpayers were contractually prohibited from using the information obtained from the other banks for any purpose other than issuing credit cards. Even this did not significantly develop the "goodwill" or other assets of the taxpayers since the credit cards were imprinted with the name of the other participating bank. The taxpayers did not acquire information from the other banks that would develop new customers for their general banking services.

■ Perhaps the most significant factor is that the payments were for a service (credit screening) that could have been performed by personnel employed by the taxpayers. We are well aware that "a transaction must be given its effect in accord with what actually occurred and not in accord with what might have occurred." *Frank Lyon Co. v. United States,* 435 U.S. 561, 576, 98 S.Ct. 1291, 1300, 55 L.Ed.2d 550 (1978). However, it is also significant that in the area of capitalization of expenditures, courts can consider tax parity between those who do work directly as opposed to having the work done by an independent contractor. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 14, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974). We are satisfied, as was the Tax Court, that had taxpayers directly acquired credit information, capitalization of the expense, including employee wages, would not have been required.[5] Credit screening is a necessary and ordinary part of the banking business; it is not a capital expenditure. Nor does it constitute a separate and new business undertaking. *Colorado Springs National Bank v. United States,* 505 F.2d 1185 (10th Cir. 1974).

Judgment affirmed.

---

5. Although the Government contends that the law is not certain that such expenditures need not be capitalized, we note that it has not appealed from the adverse judgment of the Tax Court regarding expenditures incurred when employees of the taxpayers accumulated additional credit information.