KENNETH AUSTIN BROWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 572-77.
United States Tax Court
T.C. Memo 1979-434; 1979 Tax Ct. Memo LEXIS 90; 39 T.C.M. (CCH) 397; T.C.M. (RIA) 79434; October 24, 1979, Filed *90 Petitioner operated a tutoring service for persons with learning disabilities. He rented an office. He later rented another office on a five-year lease and renovated it. He incurred telephone, promotion and transportation expenses in developing a computer monitoring program. Held, (1) petitioner is entitled to deduct under section 162, I.R.C. 1954, rental expenses paid for use of his 16th Street office; (2) costs of renovating his leased New Hampshire Avenue office constitute capital expenditures under section 263; and (3) the telephone, promotion and transportation expenditures for the computer monitoring program qualify as deductible business expenses under section 162 because they were related to the conduct of an existing business. Kenneth Austin Brown, pro se. Ruud L. DuVall, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to section 7456(c) of the Internal Revenue Code[1] *91 and General Order No. 6 of this Court, 69 T.C. XV. [2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes for 1969, 1970, and 1971 in the amounts of $773.84, $802.79, and $576.32, respectively. The issues for decision are (1) whether petitioner is entitled to deduct rental expenses of $1,324 paid for use of an office in 1972 as an ordinary and necessary business expense under section 162; (2) whether the costs of renovating a rented office are currently deductible under section 162 or whether such costs are capital expenditures under section 263; and (3) whether telephone, promotion, and transportation expenses incurred in 1972, 1973, and 1974 in the development of a computer monitoring program constitute deductible business expenses under section 162 or nondeductible preparatory expenses incurred in the development of a new trade or business. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Petitioner *92 claimed net losses on his 1972, 1973, and 1974 tax returns in the amounts of $6,522.80, $6,890.45, and $6,884.63, respectively; each of these losses was carried back three years.[3] The deficiencies in issue for the years 1969, 1970, and 1971 result from the carrybacks and reflect expenses disallowed by respondent for the years 1972, 1973, and 1974, respectively. Thus, the facts and issues discussed herein relate primarily to the years 1972, 1973, and 1974. Petitioner was a legal resident of Hyattsville, Maryland, when he filed his petition herein. He filed his individual Federal income tax returns for 1969, 1970, and 1971 with the office of the District Director, Internal Revenue Service, at Baltimore, Maryland. He worked for the Department of Commerce as a research analyst until late in 1971 when he was placed on leave without pay due to extended illness. He commenced proceedings to obtain permanent disability retirement during 1972 *93 and began to receive a U.S. Civil Service disability retirement annuity in the amount of $680 per month in 1973. Petitioner suffers from hypertension, and his health has generally deteriorated since 1967 and throughout the years in issue. While working as a research analyst for the Department of Commerce in 1969, 1970, and 1971 petitioner received wages in the amounts of $13,089.71, $14,589.60, and $14,700.32, respectively. During this same period he operated a tutoring service as a sole proprietorship transacting business under the name of AAA Mathematics, Science & Computer Tutors. The tutoring service incurred a net loss in all three of these years, and the losses were deducted from petitioner's wage income on his 1969, 1970, and 1971 tax returns. [4] After 1971 petitioner's full-time occupation was the operation of his tutoring proprietorship. With the exception of $405.45 in wages in 1973 and $107.86 in interest income in 1974, petitioner's sole sources of income in 1972, 1973, and 1974 were disability payments and tutoring fees. Petitioner charged $10 per hour for his tutoring services, and during the years 1972, 1973, and 1974 he reported income based on 115, 127, and 102 *94 lessons, respectively. During the year 1972 petitioner instructed about 65 students.He deducted $2,364 for rental expenses incurred in the operation of his tutoring business on his 1972 tax return. He rented two small single rooms suitable for one-to-one private tutoring at Sixth Street and at New Hampshire Avenue in Washington, D.C., for part of the year 1972. Respondent allowed the rental expense ($1,040) for these two facilities in his notice of deficiency. Petitioner also rented in 1972 an apartment at 16th Street, Washington, D.C., which served as his base of operations for conducting correspondence and administrative activities. The facility at 16th Street contained office furniture and a telephone but did not contain a couch, a bed, or any other personal furniture; petitioner did not stay overnight at that location. Petitioner decided in 1972 to concentrate his marketing efforts on obtaining business from Vietnam veterans through his contacts with the Veterans Administration (V.A.) and Washington, *95 D.C., area colleges. The V.A. and local colleges required tutoring services to maintain an office as an assurance of the legitimacy of the operation before they granted approval for their students' use of a particular tutoring business. The V.A. inspected petitioner's 16th Street office in 1972 before they granted approval of his business. Petitioner's correspondence and negotiations with the V.A. and colleges were conducted by telephone and mail from the 16th Street office. He taught a few lessons at the 16th Street office and spent a small amount of time there working on the research and development of his computer monitoring system (discussed infra). However, the 16th Street office existed primarily for correspondence and maintaining a necessary front for the agencies and colleges to assure them of the legitimacy of his operations. Petitioner deducted $1,324 expended for the rental of the 16th Street office as a business expense on his 1972 return. Respondent disallowed this deduction in his notice of deficiency on the ground that petitioner failed to show that the rent constituted an ordinary and necessary business expense. Petitioner abandoned the 16th Street facility *96 in 1973 and moved his tutoring business to an office at 6711 New Hampshire Avenue, Washington, D.C. n2 When petitioner obtained a five-year lease on the New Hampshire office in 1973, it was uninhabitable. He expended $2,265.86 in 1973 to renovate the premises and make it habitable. He expended an additional $540.73 in revovating the office in 1974. Most of these expenses were incurred in purchasing building materials, as much of the remodeling work was done by petitioner and friends. At the time of trial the business still maintained its office and principal place of business at this location. Petitioner deducted renovation expenses of $2,265.86 and $540.73, respectively, on his 1973 and 1974 tax returns as a business expense. Respondent determined in his notice of deficiency that these expenses constituted capital expenditures and, thus, were not wholly deductible in the year the expenses were incurred. Respondent capitalized these renovation expenses and allowed the appropriate depreciation deductions over the five-year life of the lease on the office. [6] Petitioner concedes that if he is not entitled to deduct all of the renovation expenses in 1973 and 1974 the depreciation *97 deductions allowed by respondent in his notice of deficiency are correct. [5] Petitioner deducted $892.42 on his 1974 tax return for "teaching materials and equipment." He expended $500 of this total amount for a camera. Petitioner concedes that the $500 spent for the camera was not currently deductible as claimed on his return but rather should have been capitalized and depreciated over a five-year period at the rate of $100 per year as determined by respondent in his notice of deficiency. During 1972 petitioner expended $1,889.25 and $1,905.35, respectively, for promotion and transportation expenses. During 1973 he expended $506.40, $698.06, and $2,430.34, respectively, for telephone, promotion, and transportation. During 1974 he expended $689.67, $826.15, and $885.44, respectively, for telephone, promotion, and transportation. Petitioner deducted all of the above items as business expenses on his 1972, 1973, and 1974 returns. The parties stipulated that 75 percent of the promotion expenses and 50 percent of the transportation *98 expenses claimed on petitioner's 1972, 1973, and 1974 returns related to the development of the computer monitoring program (discussed infra). They further stipulated that $126.60 and $172.42, respectively, of the 1973 and 1974 telephone expenses related to the development of the computer monitoring program. Respondent, in his notice of deficiency, disallowed all expenses deducted in 1972, 1973, and 1974 which related to the development of the computer monitoring program on the ground that they were expenses incurred in promoting a contemplated "new business" and were, thus, nondeductible under section 162. [7]
Petitioner attended college over an extended period of years (approximately ten) and undertook the study of many subjects covering a wide range to topics for the specific purpose of developing the skills and knowledge he felt were necessary in the private tutoring of students possessing learning disabilities. [8] He tutored students since graduating from college *99 in 1963 in a broad range of subjects (e.g., music, foreign languages, mathematics, science, grammar). During 1967 petitioner's health became increasingly uncertain, to the extent that he was forced to turn down business referred to him by long-standing clients. Sometime during 1967, in the face of deteriorating health and business setbacks, he developed the concept of the "computer monitored program". He decided that the best way to continue the operation of his tutoring business was to find innovative ways to promote private tutoring and to develop a tool to lighten the administrative burden of operating the business and supervising additional tutors, if needed to handle the work load. When petitioner was declared disabled by doctors and forced to leave his job with the Federal Government, he intensified his efforts to develop the computer monitored program. During 1972, 1973, and 1974 he spent much of his time developing the computer monitored program, researching similar programs, exploring market areas, and trying to develop interest in the project. The research he performed during this period on the project did not deal primarily with computer technology. Much of the information *100 obtained from the research performed on the project enabled petitioner to improve teaching methods and educational psychology principles which he immediately applied in his tutoring activities in the form of refined teching techniques. The computer monitored program was designed to have three capabilities. First, it would direct the tutoring process by monitoring what the student and the instructor were doing. Second, it would enhance the supervisory function or administrative function by keeping track of much data that would otherwise be kept track of manually. Third, it would perform a diagnostic function in monitoring the student's progress with a particular subject matter. Petitioner developed teaching techniques and lesson plans which could be programmed into the computer by using a special code that he had developed. Various types of data could be stored in the computer. A profile of the student listed the student's name, address, educational institution, educational *101 background, beginning skills, goals, and subject matter the student was being tutored in. A subject matter profile listed the student's educational objectives, starting point, goals, lesson plans, and what progress was made during each lesson.The program could eliminate most of petitioner's record keeping and enable him to spend most of his time tutoring students. Since the computer would also keep track of each student's progress from lesson to lesson, the program could enable him to personally tutor a greater number of pupils. Ideally, petitioner believed the program could enable his business to tutor a large number of students and hire additional instructions. However, his primary goal in developing the system was not to increase his business profits but to enhance his teaching process by having specific information about each student's progress readily derivable and accessible. Petitioner did not complete the development of the computer monitoring system to the point where it could be placed into operation until 1976. [9] *102 While respondent does not question the legitimacy of petitioner's business or the substantiation of any of the claimed expenses, the expenditures were disallowed on the ground that they do not constitute deductible ordinary and necessary business expenses. OPINION Initially, we address the issue of the deductibility of the rental expense incurred in 1972 for the use of the 16th Street premises. Section 162(a)(3) provides that: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * *
(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity. We believe that the record clearly shows that petitioner's rental expense for use of this facility is deductible as an ordinary *103 and necessary business expense. The premises were used solely for business purposes. They were furnished with a telephone and office fixtures and no personal furniture. The correspondence and negotiations of petitioner's tutoring proprietorship were condcted by telephone and mail from this site. The maintenance of an office for administrative purposes, in addition to the use of the small single-room facilities used for one-to-one private tutoring, was a reasonable and ordinary expense for petitioner's tutoring proprietorship. Furthermore, the maintenance of an administrative office by the business was a necessary expense due to the requirement of local colleges and the V.A., which inspected the 16th Street premises, that the business maintain an office to assure the legitimacy of the tutoring operation before they would grant their approval of petitioner's tutoring business. [10] *104 Next we consider the issue of whether the renovation expenses incurred by petitioner in 1973 and 1974 are currently deductible business expenses under section 162 or whether such expenses are capital expenditures under section 263. Section 263(a) provides that no current deduction shall be allowed for capital expenditures. n1 [11]
Section 1.162-11(b), Income Tax Regs., provides in part: Improvements by lessee on lessor's property. (1) The cost to a lessee of erecting buildings or making permanent improvements on property of which he is the lessee is a capital investment, and is not deductible as a business expense. * * * It is necessary to take into consideration the purpose for which an expenditure is made in order to determine whether such expenditure is capital in nature or constitutes a current expense. Oberman Manufacturing Co. v. Commissioner,47 T.C. 471, 482 (1967). *105 The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense under section 162. Such expenditures are distinguishable from those for replacements, alterations, improvements or additions which prolong the useful life of the property, increase its value, or make it adaptable to a different use. Oberman Manufacturing Co. v. Commissioner,supra; Jones v. Commissioner,24 T.C. 563 (1955), affd. 242 F.2d 616 (5th Cir. 1957); Illinois Merchants Trust Co. v. Commissioner,4 B.T.A. 103 (1926); sections 1.162-4 and 1.263(a)-1(a)(1), Income Tax Regs. The expenditures involved herein were not made for "incidental repairs" but were made to rehabilitate, restore, and improve an old office which was uninhabitable when petitioner obtained a lease on the premises in 1973. Petitioner testified that the New Hampshire office "was uninhabitable, and certainly not something you could bring a client into as an office. There were holes in the walls, the ceiling was torn out, the siding was bad. The finish on the walls was probably about five different *106 things." The New Hamphire office had passed beyond its "ordinary efficient operating condition" when petitioner took over the premises; the renovating expenditures materially added value to the office and gave it a new useful life. After renovating the premises in 1973 and 1974 petitioner used the office for the entire period of the five-year lease and was still using it at the time of trial. The renovation expenditures in question do not represent a currently deductible business expense but should be capitalized and recovered during the life of the lease as determined by respondent. Finally, we consider the issue of whether the telephone, promotion, and transportation expenses incurred in the development of the computer monitoring program are deductible as ordinary and necessary business expenses under section 162. Section 162(a) provides in part as follows: IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *. With respect to the relevant telephone, promotion, and transportation expenses incurred in 1972, 1973, and 1974, respondent maintains that petitioner's *107 computer monitoring program activities constituted a new or separate trade or business rather than an extension of his existing tutoring proprietorship. Therefore, concludes respondent, since the computer monitoring program was not operational until 1976, the initial costs in issue incurred by petitioner prior to that date were nondeductible preoperating costs. See Richmond Television Corporation v. United States,345 F.2d 901 (4th Cir. 1965), vacated on other grounds 382 U.S. 68 (1965), and cases cited therein. After carefully reviewing the record we think petitioner's activities in this respect did not constitute a new trade or business. Since 1963 petitioner has been actively engaged in the business of providing private one-to-one tutoring to students having learning difficulties and requiring individualized instruction. Although petitioner may have been a poor businessman during the years in issue, in the sense that his business operated at a loss, the record strongly convinces us that he was a competent, talented tutor who drew praise from the community in his success at assisting numerous troubled students.Since 1967 petitioner had pondered the idea of using the computer *108 to establish more effective and efficient teaching techniques. Due to declining health, loss of his government job, and the need to attract additional tutoring clientele, he stepped up his efforts to develop a program for a computer to monitor his teaching activities. The use of a computer as a supervisory tool to monitor petitioner's tutoring activities that had already been in existence for several years does not change the activity being monitored. The program is an administrative tool that enables the proprietorship to run more efficiently, employ improved teaching techniques, accept a greater number of students, and expand the business by hiring additional tutors, if necessary. Moreover, much of the research performed on the project enabled petitioner to improve teaching methods and educational psychology principles which he immediately applied in his tutoring activities in the form of refined teaching techniques. The computer monitored program enabled the proprietorship to carry on an old business--one-to-one private tutoring--in a new and more efficient way. A new method is distinguishable from a new business. Colorado Springs National Bank v. United States,505 F.2d 1185, 1190 (10th Cir. 1974). *109 Respondent maintains that "during 1972, 1973, and 1974 petitioner was engaged in part-time private tutoring in math, science and computer technology" and that petitioner contemplated a new enterprise in which he would "employ many different instructors in many different fields of learning in which he himself had no special expertise or skills." Accordingly, it is respondent's petition that petitioner was in the business of being a private tutor and that the expenses in issue were to prepare "to enter the business of establishing a school in which taxpayer obtained students and hired instructors." Respondent's contentions are unfounded. The record does not show petitioner's activities were designed toward the establishment of a school with petitioner as owner and chief administrator. Petitioner has been in the business of tutoring students in a vast array of subjects since 1963. Since 1971 his tutoring proprietorship has been his full-time sole occupation. The relevant expenses merely seek to take advantage of modern technology by expanding and improving the existing business of providing private one-to-one tutoring. Petitioner kept a student profile and progress report on his students *110 manually since the inception of his business; the program in issue merely enables him to continue these same record-keeping activities more efficiently by use of a computer. The courts have previously held that similar expenses (computer programming, advertising, promotional activities, training sessions, and manuals) related to a commercial bank's participation in a bank credit card system (Master Charge, Bank Americard) are currently deductible business expenses under section 162. Colorado Springs National Bank v. United States,supra;First National Bank of South Carolina v. United States,413 F.Supp. 1107 (D.S.C. 1976), affd. per curiam 588 F.2d 721 (4th Cir. 1977); First Security Bank of Idaho, N.A., v. Commissioner,63 T.C. 644 (1975), affd. 592 F.2d 1050 (9th Cir. 1979); Iowa-Des Moines National Bank v. Commissioner,68 T.C. 872 (1977), affd. 592 F.2d 433 (8th Cir. 1979). In arriving at this conclusion the courts rejected the Commissioner's principal argument that the expenses were preoperating costs of a new business, as well as his alternative contention that the expenses were not ordinary and deductible expenses since they generated future economic benefits.In reaching *111 its conclusion, the Tenth Circuit Court of Appeals in Colorado Springs National Bank v. United States,supra at 1190, stated: Before entering the credit card field, taxpayer made loans on accounts receivable and personal loans covering consumer transactions. For years banks, including taxpayer, have issued letters of credit. The credit card program furnishes a facility to handle these operations in a simple manner adaptable to operation through modern computers. * * * * * *
The credit card system takes advantage of modern technology. After a card is used, a key-punched sales slip is placed in a computer which processes and routes the transaction so that the necessary charges and credits will be made. To paraphrase the Comptroller, the use of these modern facilities furthers the objectives of our expanding national economy. The credit card system enables a bank to carry on an old business in a new way. A new method is distinguishable from a new business. * * * (Emphasis added.) Likewise, petitioner here is carrying on his old business of private tutoring by taking advantage of the modern technology of a computer. Petitionerhs activities merely attempt to expand his old business *112 of providing one-to-one private tutoring in a more efficient and effective manner. Here we have an established and going tutoring proprietorship developing a system to expand and improve its existing business. Accordingly, petitioner has satisfied the business requirement of section 162. Respondent alternatively argues that the costs in issue represent nondeductible capital expenditures because the benefits would last beyond the taxable years the costs were incurred in and, thus, are not "ordinary" within the meaning of section 162(a). [12] The courts in First Security Bank of Idaho, N.A. v. Commissioner,supra at 650; Iowa-Des Moines National Bank v. Commissioner,supra at 878, 879; Colorado Springs National Bank v. United States,supra, were faced with the same argument and held that the various expenditures, similar to those in the present case, were deductible under section 162. We think the facts of this case are analogous to the factual situations in those cases and we follow their holdings. The distinction between *113 expenditures which are currently deductible and those which are capital in nature is the primary function of "ordinary" in section 162(a). Commissioner v. Lincoln Savings and Loan Association,403 U.S. 345 (1971).Generally, expenditures to acquire assets which last beyond the taxable year must be capitalized. E.g., United States v. Mississippi Chemical Corporation,405 U.S. 298 (1972). Nevertheless, the mere presence of some possible future benefit from an expenditure is not controlling where such payment was made to promote the taxpayer's existing business. Commissioner v. Lincoln Savings and Loan Association,supra;Colorado Springs National Bank v. United States,supra;Iowa-Des Moines National Bank v. Commissioner,supra.Applying these principles, it is clear that petitionerhs expenditures for telephone, promotion, and transportation were merely related to the conduct of an existing business. These expenditures involved transactions that are of a common and frequent occurrence in the operation of any business offering its services to the public. Expenses for telephone, promotion, and transportation are normal expenses which generally occur each day in operating a business. *114 Indeed, it is hard to imagine how a tutoring business could operate and attract students as potential customers without the incurrence of such recurring expenditures. See Iowa-Des Moines National Bank v. Commissioner,supra at 879.We therefore hold that petitioner's telephone, promotion, and transportation expenses are deductible business expenses under section 162. [13] *115 To reflect our conclusions herein, decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. 2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
3. Petitioner filed an Application for Tentative Refund from Carryback of Net Operating Loss (Form 1045) for 1972, 1973, and 1974, carrying back the respective losses to 1969, 1970, and 1971.The tentative carrybacks were accepted and the refunds paid.↩
4. Respondent did not question the deductibility of any of the tutoring service's business expenses listed on Schedule C of petitioner's tax returns for the years 1969 through 1971.↩
6. A procedure in accord with sec. 1.162-11(b), Income Tax Regs.↩
5. Petitioner listed this address as the proprietorship's business address on his 1973 and 1974 returns. ↩
7. Respondent disallowed expenses related to the development of the computer monitoring program in the following amounts: ↩
1972
1973
1974
Telephone
$ 126.60
$172.42
Promotion
1,416.94
523.54
619.61
Transportation
952.68
1,215.17
442.72
8. Petitioner acquired an interest in tutoring early in high school and junior college when he discovered he had a better "knack" for instructing students with learning difficulties than did school teachers.↩
9. To illustrate the types of work and research done by petitioner on his program, several exhibits were submitted, including the following: Teaching and Learning Via Computer (TLC), Orientation for Coders; Coding Forms, Student's Planned Program of Study (SPPS); Coding Forms, Counselor's Report; Lesson Plans for a Hypothetical Student; Lesson Plans and Performance for a Specific Student.
10. We note that the present case is quite different from the usual "office in home" situation (e.g., Meehan v. Commissioner,66 T.C. 794 (1976), appeal dismissed (3d Cir. Aug. 31, 1977); Sharon v. Commissioner,66 T.C. 515 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied June 18, 1979). Here, petitionr did not use a room or portion of his home but actually rented an apartment which he used solely↩ for his tutoring proprietorship.
11. SEC. 263. CAPITAL EXPENDITURES. (a) GENERAL RULE.--No deduction shall be allowed for-- (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *↩
12. Respondent summarily raises this alternative contention in the last two sentences of his brief without reasoning and without citing supporting case precedent.↩
13. Furthermore, we note that in Rev. Proc. 69-21, 169-2 C.B. 303, the Internal Revenue Service ruled that the costs of developing computer software (whether or not the software is patented or copyrighted) in many respects so closely resemble the kind of research and experimental expenditures that fall within the purview of section 174 as to warrant accounting treatment similar to that accorded such costs under that section. Accordingly, the Service ruled it "will not disturb a taxpayer's treatment of costs incurred in developing software, either for his own use or to be held by him for sale or lease to others, where: 1.All of the costs properly attributable to the development of software by the taxpayer are consistently treated as current expenses and deducted in full in accordance with rules similar to those applicable under section 174(a) * * *." Here the petitioner has consistently treated since 1967 his costs of developing the computer monitoring program as current, deductible expenses. We are not inclined to upset such consistent treatment in these circumstances.↩