T.C. Summary Opinion 2002-8


UNITED STATES TAX COURT


DAVID LLEWELLYN AND KAY MARIE ROSE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6434-00S.                    Filed February 5, 2002.


David Llewellyn Rose, pro se.

Timothy F. Salel, for respondent.


COUVILLION, Special Trial Judge:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $1,924, $2,479, and $3,146 in petitioners' Federal income taxes for 1995, 1996, and 1997, respectively.

The issues for decision are: (1) Whether, for 1995, 1996, and 1997, petitioners are entitled to deduct travel expenses of $37,668, $36,393, and $14,726, respectively, in connection with an air racing activity of David L. Rose (petitioner); (2) whether, for each of the years at issue, petitioners are entitled to deduct labor expenses in connection with petitioner's air racing activity in excess of amounts allowed by respondent; and (3) whether, for 1996, respondent properly disallowed $8,737 of petitioners' claimed basis in a 1970 Plymouth Barracuda automobile sold during that year. The remaining adjustments to petitioners' itemized deductions, for each of the years at issue, are computational and will be resolved by the Court's holdings on the aforementioned issues.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was La Jolla, California.

Petitioner was a commercial airline pilot for American Airlines for 33 years prior to his retirement in May 1997. In general, commercial airline pilots are required to retire at age 60, and that was the reason for petitioner's 1997 retirement.

Soon after he began flying with American Airlines, petitioner's flight base was San Francisco, California, where he lived until 1974. In 1972, petitioner took advantage of the opportunity to change his flight base to San Diego, California, and fly routes primarily from San Diego to the east coast. After flying out of San Diego for 2 years, petitioner moved his personal residence there sometime during 1974.

In 1994, American Airlines closed its crew base at San Diego, requiring pilots to bid for other flight bases in the existing system. Consequently, from June 1994 to June 1995, petitioner's flight base was Miami, Florida; from June 1995 through June 1996, petitioner's flight base was Chicago, Illinois; and from June 1996 through May 1997, petitioner's flight base was Seattle, Washington. During the last 3 years of his employment with American Airlines, petitioner primarily captained international flights to Europe, South America, and Asia. Petitioner maintained his personal residence in the San Diego area during all of these years.

Around 1990, petitioner began to realize that his retirement was imminent, and he needed to become involved in new financial endeavors that he could continue upon his retirement. Petitioner's background in aviation led him to embark on an activity commonly known as air racing. Air racing competitions are held worldwide, in which participants fly private aircraft to

compete for monetary prizes. Some races, known as pylon races, are held on circular courses that provide starts and finishes at a single location. For instance, at the National Championship Air Races held in Reno, Nevada, each September, the "closed-circuit" course is approximately 9 miles long, and some classes of participants approach flight speeds of 500 miles per hour. At this rate of speed, one lap can be completed in little more than one minute. All of the racing action takes place in clear view of the spectators. In cross-country races, the participants race from one geographic location to another.

In 1991, petitioner purchased his first aircraft and began racing in September 1992. During the years at issue, as well as years subsequent thereto, petitioner was heavily involved in air racing. In 1994 and 1995, petitioner designed his own racing aircraft, the Mach Buster, which he began building in 1995. Some expenses related to the building of the Mach Buster are at issue in this case.

In the late 1980s, petitioner became involved in buying, restoring, and selling classic automobiles. During 1989, petitioner purchased a 1970 Plymouth Barracuda automobile (Barracuda), on which he spent several years restoring. Petitioner had some degree of difficulty selling the Barracuda but eventually sold it in 1996 at a significant loss. The

adjusted basis in the car at the time of its sale is at issue in this case.

On their joint Federal income tax returns for 1995, 1996, and 1997, petitioners included Schedules C, Profit or Loss From Business (Schedules C), in connection with petitioner's air racing activity.  In pertinent part, petitioners claimed the following travel expenses and labor expenses in connection with the air racing activity:

| Expenses | 1995 | 1996 | 1997 |
|----------|------|------|------|
| Travel | $37,668 | $36,393 | $14,726 |
| Labor | 60,722 | 19,019 | 37,605 |

In the notice of deficiency, respondent disallowed all of the travel expenses claimed for each of the years at issue.  Of the labor expenses claimed, respondent disallowed $12,250 for 1995, $5,000 for 1996, and $17,000 for 1997.

Additionally, on their 1996 return, petitioners included a Schedule C in connection with petitioner's classic car restoration and sales activity.  On this Schedule C, petitioners reported sales income of $29,000 and an adjusted basis of $76,771 (reported as cost of goods sold) in connection with the sale of the aforementioned restored 1970 Plymouth Barracuda automobile. Thus, petitioners reported a loss of $47,771 from the sale of the

Barracuda.  In the notice of deficiency, respondent disallowed $8,737 of the claimed basis in the Barracuda.

As a result of these adjustments, respondent made computational adjustments to petitioners' itemized deductions for each of the years at issue.

The first issue is whether, for each of the years at issue, petitioners are entitled to deduct travel expenses in connection with petitioner's air racing activity.  The parties have agreed that petitioner's tax home for the years at issue was not San Diego but, rather, was either Miami, Chicago, or Seattle during those years.[2]

Petitioner conducted his air racing activity in San Diego during each of the years at issue.  Therefore, petitioner deducted away-from-home travel expenses for each day that he was in San Diego during the years at issue.  These included expenses for lodging, meals, and incidental expenses while in San Diego but did not include a deduction of expenses for travel to and from his various tax home locations and San Diego.  Rather than deducting his actual expenses in San Diego, petitioner elected a

_____

[2]    A "home" for purposes of sec. 162(a)(2) means the vicinity of the taxpayer's principal place of business rather than the personal residence of the taxpayer, when the personal residence is not in the same vicinity as the place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. en banc 662 F.2d 253 (4th Cir. 1981).

per diem amount for each day he was in San Diego.  Petitioner

determined the number of days he was in San Diego during each of

the years at issue and then multiplied that by a high-cost

locality per diem rate provided in various Internal Revenue

Service revenue procedures for the years at issue.[3]

For each of the years at issue, petitioner also deducted

expenses for traveling from San Diego to various air races and

air shows in locations such as Reno, Nevada.  The travel expenses

claimed by petitioner for each of the years at issue in

connection with his air racing activity were in the following

amounts:

| Expenses | 1995 | 1996 | 1997 |
|----------|------|------|------|
| Per Diem in San Diego | $35,112 | $31,212 | $13,832 |
| Travel to air races | 2,556 | 5,181 | 894 |
| Total | $37,668 | $36,393 | $14,726 |

As stated previously, respondent disallowed all of the claimed

air racing travel expenses for each of the years at issue.

Section 162(a) allows a deduction for the ordinary and

necessary expenses paid or incurred during the taxable year in

---

[3]     Rev. Proc. 94-77, 1994-2 C.B. 825, was in effect for
1995, Rev. Proc. 96-28, 1996-1 C.B. 686, was in effect for 1996
(as of April 1, 1996), and Rev. Proc. 96-64, 1996-2 C.B. 427, was
in effect for 1997.  These publications provided high-cost
locality per diem rates of $152 for 1995 and 1996 and $166 for
1997.  In calculating his San Diego expenses, petitioner, for
reasons unexplained, used a per diem rate of $152 for 1995 and
1997 but used a rate of $153 for 1996.

carrying on a trade or business.  Section 162(a)(2) expressly permits the deduction of traveling expenses, including meals and lodging, while away from home in the pursuit of a trade or business.  A taxpayer may deduct a traveling expense under section 162(a)(2) if the following three conditions are satisfied:  (1) The expense must be reasonable (e.g., lodging, transportation, fares, and food); (2) it must be incurred while away from home; and (3) it must be an ordinary and necessary expense incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946).  The rationale in allowing such a deduction is to alleviate the burden falling upon a taxpayer whose business requires that he or she incur duplicate living expenses.  Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Whether the taxpayer satisfies the three recited conditions is purely a question of fact.  Commissioner v. Flowers, supra at 470; Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969), affg. 48 T.C. 308 (1967).  Expenses that do not meet these criteria are considered personal expenses and are not deductible under section 262(a).

Moreover, a taxpayer generally is required to maintain records to substantiate the amount of his or her income and deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Under certain circumstances, where a taxpayer establishes entitlement

to a deduction but does not establish the amount of the deduction, the Court is allowed to estimate an allowable amount. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, section 274(d) precludes use of the so-called Cohan rule and provides that no deduction is allowable under section 162 for any traveling expenses, including meals and lodging while away from home unless the taxpayer complies with strict substantiation rules. Sec. 274(d)(1), (4). Particularly, the taxpayer must substantiate the amount, time, place, and business purpose of the enumerated types of expenses by adequate records or by sufficient evidence corroborating his own statement. Sec. 274(d); sec. 1.274-5T(b)(2), (6), (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985).

To address circumstances under which it would be impracticable or overly burdensome to require detailed documentary evidence, section 274(d) and the regulations thereunder vest the Secretary with the authority to promulgate regulations that prescribe alternative methods for substantiating expenses covered by section 274. Sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985). Pursuant to this authority, the Secretary issued Rev. Proc. 94-77, 1994-2 C.B. 825; Rev. Proc. 96-28, 1996-1 C.B. 686; and Rev. Proc. 96-64, 1996-2 C.B. 427, in effect for the years 1995, 1996, and 1997, respectively, providing rules under which the amount of

ordinary and necessary business expenses of an employee for lodging, meals, and/or incidental expenses incurred while traveling away from home will be deemed substantiated for purposes of section 274(d). These revenue procedures also provide an optional method for employees and self-employed individuals to substantiate the amount of business, meal, and incidental expenses incurred while traveling away from home. Petitioner relies on these revenue procedures to support the per diem expense deductions claimed for the days he was in San Diego during the years at issue.[4]

While section 4.01 of each of the aforementioned revenue procedures authorizes the per diem method to substantiate lodging, meal, and incidental costs, the per diem method is available only to employers who pay a per diem allowance in lieu of reimbursing the actual expenses an employee incurs while traveling away from home. Therefore, petitioner's claimed San Diego expenses are not included within this provision because he was self-employed in connection with the air racing activity. Although petitioner, as a self-employed individual, is entitled to rely on the per diem method allowed under section 4.03 of each of the aforementioned revenue procedures, such reliance is

---

[4] Petitioner repeatedly made reference to Rev. Proc. 93-50, 1993-2 C.B. 586; however, this revenue procedure was not in effect for any of the years at issue but, rather, was effective from Jan. 1 through Dec. 31, 1994.

limited to only meals and incidental expenses and not lodging. Accordingly, petitioner's claimed San Diego lodging expenses for each of the years at issue are not deemed substantiated under the aforementioned revenue procedures, and, since petitioner maintained no independent records under section 274(d) to substantiate these expenses, he is not entitled to a deduction of the claimed lodging expenses for those years.

As stated, section 4.03 of each of the aforementioned revenue procedures allows a self-employed taxpayer the per-diem method for meals and incidental expenses, but only if the taxpayer "substantiates the elements of time, place, and business purpose of the travel expenses".  Respondent argues that petitioner failed to substantiate these elements and, therefore, is not entitled to the per diem method for meals and incidental expenses for the years at issue.

Upon an exhaustive examination of the record in this case, the Court finds that petitioner has adequately substantiated the time and place but not the business purpose of his days in San Diego during the years at issue.  Petitioner's personal residence was in San Diego during each of the years at issue, and the Court is satisfied that petitioner would have spent the same number of days there regardless of whether or not he was conducting a trade or business in San Diego during those years.  Moreover, section 1.162-2(b)(1), Income Tax Regs., provides that, if travel

expenses are incurred for both business and other purposes, such expenses are deductible only if the travel is primarily related to the taxpayer's trade or business.  If a trip is primarily personal in nature, expenses incurred are not deductible even if the taxpayer engaged in some business activities at the destination.  Id.

Whether travel is related primarily to the taxpayer's trade or business or is primarily personal is a question of fact.  Sec. 1.162-2(b)(2), Income Tax Regs.; Holswade v. Commissioner, 82 T.C. 686, 698, 701 (1984).  The amount of time during the period of the trip that is spent on personal activity, compared to the amount of time spent on activities directly relating to the taxpayer's trade or business, is an important factor in determining whether the trip is primarily personal.  The taxpayer must prove that the trip was primarily related to the trade or business.  Rule 142(a).  Petitioners failed to establish that petitioner spent more time on his air racing activity than on personal endeavors during his days in San Diego.[5]

---

[5]     As the Court understands the evidence presented, petitioner attributed the entire time he was not flying commercially to time in San Diego that was devoted exclusively to his trade or business activities in San Diego, with no allowances made for personal time petitioner spent with his wife and family or other personal endeavors.  There is also some indication that the records of American Airlines reflected that petitioner was flying for the airline on certain days; yet, petitioner claimed these same days in San Diego attending to his trade or business

(continued...)

Although petitioner may have devoted numerous hours during his time in San Diego to the air racing activity, the Court concludes that petitioner's travel to San Diego was primarily personal in nature and was not primarily related to his air racing activity. Moreover, the Court is satisfied that, but for the fact that his personal residence was in San Diego, petitioner would not have conducted his air racing activity there but would have chosen whatever location coincided with his personal residence. Consequently, the Court holds that petitioner is not entitled to the per diem method for meals and incidental expenses for his time spent in San Diego during 1995, 1996, and 1997. Thus, the Court holds that petitioners are not entitled to deduct any travel expenses in connection with the air racing activity for the days petitioner was in San Diego during the years at issue.

With respect to the other travel expenses claimed in connection with the air racing activity for petitioner's trips to various air races, the Court is satisfied that petitioner did incur travel expenses in connection with these trips. Unfortunately, however, petitioners failed to substantiate the

---

[5](...continued)
activities. Other records of American Airlines reflected petitioner was not flying on certain days because of illness; yet, petitioner claimed those same days as being engaged in his trade or business in San Diego.

amount, time, place, and business purpose of these expenses as required by section 274(d). Under this circumstance, the Court is precluded from using the Cohan doctrine to estimate the amount of the travel expenses incurred in connection with such travel. Accordingly, the Court holds that petitioners are not entitled to deduct travel expenses in connection with petitioner's trips to air races for any of the years at issue. Thus, petitioners are not entitled to deduct any travel expenses in connection with petitioner's air racing activity for any of the years at issue. Respondent is sustained on this issue.

The second issue is whether petitioners are entitled to deduct labor expenses for each year at issue in connection with the air racing activity in excess of amounts allowed by respondent. On Schedules C of their returns, petitioners deducted labor expenses of $60,722 for 1995, $19,019 for 1996, and $37,605 for 1997. In the notice of deficiency, respondent disallowed labor expenses of $12,250, $5,000, and $17,000, respectively, for 1995, 1996, and 1997, due primarily to lack of substantiation. Respondent also argues that, if the Court finds that petitioners substantiated the disallowed amounts, such amounts represented expenses for construction of the Mach Buster airplane, and, thus, these amounts are not deductible with respect to the air racing activity and should be capitalized subject to depreciation with respect to the Mach Buster.

As to the question of substantiation, the Court finds on this record that petitioners substantiated labor expenses of $60,096 for 1995, $17,406 for 1996, and $41,960 for 1997. Therefore, in addition to the labor expenses respondent allowed for each year in the notice of deficiency, the Court finds that petitioners substantiated labor expenses of $11,624 for 1995, $3,387 for 1996, and $21,355 for 1997. The Court next considers whether these additional labor expenses were related to construction of the Mach Buster airplane, in which event such expenses would be capitalized, or whether these expenses were incurred in connection with the air racing activities.

Section 263(a)(1) provides generally that no deduction shall be allowed for "Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." The Treasury regulations interpret this text by listing the following item as an example of a capital expenditure: "The cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year." Sec. 1.263(a)-2(a), Income Tax Regs.

Whether an expense is deductible under section 162(a) or must be capitalized under section 263(a)(1) is a factual determination for which there is no controlling rule. "[E]ach case 'turns on its special facts'", and "the cases sometimes appear difficult to harmonize." INDOPCO, Inc. v. Commissioner,

503 U.S. 79, 86 (1992) (quoting <u>Deputy v. du Pont</u>, 308 U.S. 488, 496 (1940)).  Petitioners bear the burden of establishing their right to deduct the disputed expenses.  <u>Id.</u> at 84, 86; <u>Welch v. Helvering</u>, 290 U.S. 111, 114-116 (1933); <u>A.E. Staley Manufacturing Co. & Subs. v. Commissioner</u>, 119 F.3d 482, 486 (7th Cir. 1997), revg. and remanding 105 T.C. 166 (1995).

Under the current law on capitalization, an expenditure may be deductible in one setting but capitalizable in a different setting.  For example, in <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 13 (1974), the Supreme Court observed the following as to wages paid by a taxpayer in its trade or business:

> Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. * * * But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired. * * *

Thus, when an expense creates a separate and distinct asset, it usually must be capitalized.  <u>Commissioner v. Lincoln Sav. & Loan Association</u>, 403 U.S. 345 (1971); <u>FMR Corp. & Subs. v. Commissioner</u>, 110 T.C. 402, 417 (1998); <u>Iowa-Des Moines Natl. Bank v. Commissioner</u>, 68 T.C. 872, 878, (1977), affd. 592 F.2d 433 (8th Cir. 1979).  When an expense does not create such an asset, the most critical factors to consider are the period of time over which the taxpayer will derive a benefit from the expense and the significance to the taxpayer of that benefit.

INDOPCO, Inc. v. Commissioner, supra at 87-88; United States v. Miss. Chem. Corp., 405 U.S. 298, 310 (1972); FMR Corp. & Subs. v. Commissioner, supra at 426; Conn. Mut. Life Ins. Co. v. Commissioner, 106 T.C. 445, 453 (1996).

The record reflects that the additional labor expenses substantiated by petitioners were incurred in connection with the construction of the Mach Buster airplane, an asset having a useful life substantially beyond the years in which the expenditures were incurred.  Therefore, the Court holds that the aforementioned additional labor expenses substantiated by petitioners, i.e., $11,624, $3,387, and $21,355 for 1995, 1996, and 1997, respectively, are not currently deductible but, rather, must be capitalized and eventually depreciated as a portion of the cost of constructing the Mach Buster airplane.

Finally, petitioners contend that the Mach Buster airplane was placed in service in 1997, and, thus, some depreciation should be allowed for that year.  Conversely, respondent contends that the Mach Buster was placed in service no earlier than 1998, and perhaps later, therefore, no depreciation for the airplane should be allowed for any of the years at issue.

Section 167(a) allows taxpayers a depreciation deduction for the exhaustion and wear and tear of property used in a trade or business or held for the production of income.  Property becomes depreciable beginning when it is "placed in service".  Piggly Wiggly S., Inc., v. Commissioner, 84 T.C. 739, 745 (1985), affd.

on another issue 803 F.2d 1572 (11th Cir. 1986); Clemente v. Commissioner, T.C. Memo. 1985-367; sec. 1.167(a)-10(b), Income Tax Regs.  Property is considered "placed in service" when it is ready and available for a specifically assigned function.  Piggly Wiggly S., Inc., v. Commissioner, supra; Williams v. Commissioner, T.C. Memo. 1987-308; sec. 1.167(a)-11(e)(1)(i), Income Tax Regs.  Consequently, although the Mach Buster had not been flown in an air race during any of the years at issue, it could still be considered depreciable in the year in which it became "ready and available" for flying in air races.

The record reflects that the Mach Buster airplane was not ready and available for air racing until sometime after 1997. Although it appears that construction of the aircraft was completed in early 1997, a so-called "flutter analysis" was conducted on the Mach Buster by a third party during most of the remainder of 1997.  A flutter analysis was described by petitioner as "an examination of the basic aerodynamics of the airplane and the structure as completed."  The flutter analysis determines how an airplane will "react to the airloads on it" during flight; i.e., whether the aircraft components will fly smoothly or "flutter so rapidly that they destroy themselves." The flutter analysis findings were not published until February 1998.

Petitioner contends that, even though the flutter analysis findings were not published until February 1998, he could have

flown the airplane at any time after its completion in early 1997. In connection with that argument, the following testimony was offered at trial:

> COURT: * * * So then from what you're telling me, while this process [the flutter analysis] was underway, the FAA probably would not have allowed you to fly that plane.
>
> PETITIONER: Oh, actually, they would have, Your Honor. A flutter analysis is not required on an aircraft.
>
> COURT: Well, then why were you having it done?
>
> PETITIONER: Because I am cautious. I don't want to kill myself in an airplane that comes apart due to flutter. * * *

The Court is satisfied that the Mach Buster was not ready and available for its specifically assigned function, i.e., air racing, until at least February 1998, when petitioner became satisfied by the flutter analysis results that the aircraft was airworthy.[6] Thus, the Court finds that the Mach Buster airplane was not placed in service during the years at issue. Therefore, petitioners are not entitled to depreciation deductions on the Mach Buster for any of the years at issue.

The final issue for decision is whether, for 1996, respondent properly disallowed $8,737 of petitioners' claimed

---

[6] The Court finds it also notable, although not determinative, that petitioner attempted to enter the Mach Buster in the National Championship Air Races at Reno, Nevada, for Sept. 1999; however, the Reno Air Race Association rejected the entry because the Mach Buster had not been previously demonstrated on the race course.

adjusted basis in a 1970 Plymouth Barracuda automobile sold during that year.  During 1989, in connection with his classic car restoration and sales activity, petitioner purchased a 1970 Plymouth Barracuda automobile for restoration and resale.  After extensively restoring the Barracuda, petitioner encountered some difficulty in selling the car.  However, petitioner eventually sold the Barracuda during 1996 for $29,000, at a substantial loss.  On the classic car restoration Schedule C of their 1996 return, petitioners reported sales income of $29,000 in connection with the Barracuda and an adjusted basis in the car (reported as cost of goods sold) of $76,771.  Thus, petitioners claimed a loss of $47,771 from the sale of the Barracuda.  After deducting $1,770 in other various expenses, petitioners claimed a net loss of $49,541 from the classic car restoration and sales activity.  In the notice of deficiency, respondent disallowed $8,737 of the $76,771 claimed adjusted basis in the Barracuda.

Section 1011(a) provides that the adjusted basis for determining gain or loss from the sale or other disposition of property is the basis determined under section 1012, adjusted as provided in section 1016.  Generally, under section 1012, the basis of property is its cost.  The cost is the amount paid for such property in cash or other property.  Sec. 1.1012-1(a), Income Tax Regs.  The cost basis is increased by the cost of capital improvements and betterments made to the property.  Sec. 1016(a)(1); sec. 1.1016-2(a), Income Tax Regs.  Moreover, the

cost basis is decreased by the amount of any depreciation previously allowed but not by less than the amount allowable with respect to the property. Sec. 1016(a)(2); sec. 1.1016-3(a), Income Tax Regs.

Taxpayers generally bear the burden of proving entitlement to costs and deductions claimed. Bennett Paper Corp. & Subs. v. Commissioner, 699 F.2d 450, 453 (8th Cir. 1983), affg. 78 T.C. 458 (1982). However, as stated previously herein, this Court may estimate costs and allowable deductions under certain circumstances. Cohan v. Commissioner, 39 F.2d at 543-544. Any such estimate, however, must have a reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

After reviewing the evidence presented by petitioners in support of their claimed adjusted basis in the Barracuda, the Court finds that petitioners failed to substantiate a basis in the Barracuda in excess of the amount allowed by respondent in the notice of deficiency. Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.